UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
v.                             )      No.:  3:07-CR-51
                               )            (VARLAN/SHIRLEY)
AARON BROOKS,                  )
                               )
          Defendant.           )

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant Aaron Brooks's ("Brooks")

Motion for Judgment of Acquittal or in the Alternative for a New Trial and for an Extension

of Time (the "motion for acquittal or new trial") [Doc. 550].  The United States has

responded in opposition [Doc. 562].  Also before the Court is Brooks's Motion to Adopt Co-

Defendant's Motion to Vacate Judgment and Grant New Trial (the "motion to adopt") [Doc.

617], in which Brooks moves the Court to allow his adoption of the Motion to Vacate

Judgment and Grant a New Trial ("motion to vacate") [Doc. 610], filed by Lashonda Hall

("Hall"), a co-defendant in this case.  The government has not filed a response to the motion

to adopt.  However, the government filed a response to the motion to vacate when that

motion was filed in the Hall case [Doc. 611].

The Court has reviewed the pending motions and the government's response to the

motion for acquittal or new trial, all in light of the relevant and controlling law.  For the

reasons that follow, the motion to adopt [Doc. 617] will be granted, the adopted motion to

vacate [Doc. 610] will be denied, and the motion for acquittal or new trial [Doc. 550] will be denied.

I.    **BACKGROUND**

Brooks, along with fourteen co-defendants, was charged with conspiracy to distribute drugs and other related charges in a multiple-count second superseding indictment [*see* Doc. 224]**.**  In June 2009, Brooks, along with co-defendant Hall, proceeded to a jury trial before the Honorable Thomas A. Varlan, United States District Judge [*see* Docs. 519-36].  At the close of proof, Brooks and Hall, each through counsel, made motions for judgments of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure [*see* Doc. 586, pp. 181-92].  The Court denied the motions [*Id.,* pp. 191-92].

On June 19, 2009, the jury returned a verdict, finding Brooks guilty on the following counts: count one, conspiracy to distribute and possession with intent to distribute cocaine hydrochloride, crack, marijuana, and ecstacy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), 841(b)(1)(C) and 841(b)(1)(D); count seven, aided and abetted by another and in possession of a firearm in furtherance of the drug conspiracy charged in count one, in violation of 18 U.S.C. §§ 924(c) and 2; count eight, aided and abetted by another and in possession with intent to distribute five-hundred (500) grams or more of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2; count nine, aided and abetted by another and in possession of a firearm in furtherance of the conspiracy charged in count eight, in violation of 18 U.S.C. §§ 924(c) and 2; and count ten,

being a felon and aided and abetted in the possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 2 [*see* Docs. 224, 537].

Brooks filed the instant motion for acquittal or new trial [Doc. 550] on June 30, 2009. In the motion for acquittal or new trial, Brooks also requested an extension of time to file post-trial motions, because, at the time of the filing, the trial transcript was not yet available. The proceedings of the trial were transcribed and available to the parties on September 2, 2009 [*see* Docs. 580-86]. Brooks has not submitted any post-trial motion or supplemental post-trial motion since the trial transcripts became available. On March 30, 2010, the Court entered an Order [Doc. 614], granting Brooks's request for an extension of time to file post-trial motions or supplemental post-trial motions, up to and including seven (7) days from the entry of that Order. The Court also permitted the government seven (7) days to respond. On April 6, 2010, Brooks filed the motion to adopt [Doc. 617] the motion to vacate [Doc. 610]. The government has not filed a response to the motion to adopt [Doc. 610] but has previously responded, in the Hall case, to the motion to vacate [Doc. 611].

## II.     ANALYSIS

### A.     Motion to Adopt

The Court first turns to the motion to adopt [Doc. 617], in which Brooks moves the Court to allow adoption of the motion to vacate [Doc. 610], filed in the Hall case. In support, Brooks states that the motion to vacate sets forth facts and law germane and relevant to this case. The motion to adopt will be granted.

The Court previously considered and denied the motion to vacate filed by defendant Hall [Doc. 616]. In addition, the Court previously considered and denied [*see* Doc. 612] a substantively similar motion involving the same two affidavits [*see* Docs. 521, 571-1, 592-1], filed by defendant Johnnie Martin ("Martin"). The motion filed by defendant Martin was the first motion to reference the two affidavits which were also filed with the motion to vacate filed by defendant Hall and now, requested to be adopted by defendant Brooks.

In the motion to adopt, Brooks has provided no other facts, legal argument, citations to the record, or affidavits supporting the motion to vacate. Accordingly, and for the reasons stated in the Court's previous two orders denying the arguments contained in the motion to vacate [*see* Doc. 612; Doc. 616], and because no other reasons have been cited by Brooks and no argument advanced as to why this Court should deviate from its prior rulings—denying both the Martin and the Hall motions—the Court declines to deviate from its prior rulings and Brooks's adopted motion to vacate [Doc. 610] is likewise denied.

**B.      Motion for Acquittal or New Trial[1]**

The Court now turns to the motion for acquittal or new trial, brought pursuant to Rule 29(c) and Rule 33(a) of the Federal Rules of Criminal Procedure. In this motion, Brooks requests that the Court grant a judgment of acquittal on grounds that the evidence at trial was insufficient to support his convictions. Alternatively, and pursuant to Rule 33(a) of the

---

[1] Neither Brooks nor the government have submitted citations to the transcript of this trial in support of their arguments. The transcript of this trial has been available since September 2, 2009.

Federal Rules of Criminal Procedure, Brooks requests a new trial based on insufficient evidence, prosecutorial misconduct, arguments regarding jury composition and selection, errors in the Court's ruling on various pre-trial motions, errors related to witness testimony, and various errors at trial. The government has responded in opposition, stating that there was sufficient evidence at trial to support the verdicts of the jury, the allegations of prosecutorial misconduct are unfounded, and the other alleged errors are without merit.

### C.     Sufficiency of the Evidence Under Rule 29(c) and Rule 33(a)

A Rule 29(c) motion is a challenge to the sufficiency of the evidence, raised following a jury verdict or discharge. *See* Fed. R. Crim. P. 29(c).[2] When reviewing an insufficiency of the evidence claim, a court must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In undertaking this analysis, the court can neither independently weigh the evidence, nor judge the credibility of the witnesses who testified at trial. *See United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996), *cert. denied sub nom., Parker v. United States*, 519 U.S. 1134 (1997). After a review of the evidence, a court may conclude that a conviction is supported by sufficient evidence even though the circumstantial evidence does not "'remove every reasonable hypothesis except

---

[2] Brooks moved for a judgment of acquittal at the close of proof, pursuant to Federal Rule of Criminal Procedure 29(a). The Court denied the motion, and thus, the instant motion is a renewed motion for judgment of acquittal pursuant to Rule 29(c) [*see* Doc. 586, pp. 181-92]. *See* Fed. R. Crim. P. 29(a), (c).

that of guilt.'" *United States v. Jones*, 102 F.3d 804, 807 (quoting *United States v. Clark*, 928 F.2d 733, 736 (6th Cir. 1991) (per curiam)). In making this evaluation, the sufficiency of the evidence must be viewed in terms of the entirety of the record. *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984). Circumstantial evidence standing alone may sustain a conviction so long as the totality of the evidence is substantial enough to establish guilt beyond a reasonable doubt. *Id.*

Brooks has also brought a challenge to the sufficiency of the evidence in this case by moving for a new trial under Federal Rule of Criminal Procedure Rule 33(a). *See* Fed. R. Crim. P. 33(a). A motion for a new trial under Rule 33(a) "may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007). Generally, a motion for a new trial under Rule 33(a) should only be granted "in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *Hughes*, 505 F.3d at 593 (citation omitted). In considering a Rule 33(a) challenge to a conviction based on the weight of the evidence, a court can "consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice. It has often been said that . . . [the judge] sits as a thirteenth juror." *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988) (internal quotation omitted).

Thus, while Rule 29(c) and Rule 33(a) deal with similar issues, the two rules are governed by different standards of review. On a motion for judgment of acquittal, pursuant to Rule 29(c), a court is required to approach the evidence from a standpoint most favorable

to the government, and to assume the truth of the evidence offered by the prosecution. On a motion for new trial pursuant to Rule 33(a), the power of a court is much broader because a court may weigh the evidence and consider the credibility of the witnesses. *See* Charles Alan Wright, Nancy King & Susan Klein, *Federal Practice and Procedure* § 553 (3d ed. 2004).

Brooks argues that based on the evidence produced at trial, no rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. Specifically, Brooks asserts that no drugs, firearms, or "untoward" sums of money were found on him and his fingerprints were not found on any drug containers, firearms, or any other surfaces. Brooks also asserts that there were no surveillance photos of drug transactions, no testimony regarding any specific wrongful acts, no GPS tracking of cell phones linked to him, and a complete lack of proof as to any inference of criminal conduct. In light of the broader scope of Rule 33(a), the Court will first address the arguments pursuant to that rule.

### 1. Drug Charges

Brooks was convicted of conspiracy to distribute and possession with intent to distribute cocaine hydrochloride, crack, marijuana, and ecstacy in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), 841(b)(1)(C) and 841(b)(1)(D). Brooks was also convicted of being in possession with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2, which confers aider and abetter liability. To prove a charge of drug conspiracy under 21 U.S.C. § 846, the government must prove,

beyond a reasonable doubt: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy. *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005). No formal agreement is necessary to prove a charge of conspiracy; rather, "'a tacit or material understanding among the parties'" is sufficient. *Id.* (quoting *United States v. Avery*, 128 F.3d 966, 970-71 (6th Cir. 1997) (citation omitted)). The existence of a conspiracy may also be shown by direct evidence or inferred from circumstantial evidence. *Avery*, 128 F.3d 971.

To prove a defendant guilty as an aider and abettor, the government must prove, beyond a reasonable doubt: (1) knowing and intentional possession of drugs; (2) knowledge that the substance was drugs; and (3) intent to distribute the drugs. *United States v. Phibbs*, 999 F.2d 1053, 1063 (6th Cir. 1993). The statute for aider and abetter liability provides that "[w]hoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principle [in the offense]." 18 U.S.C. § 2(a).

Counsel for Brooks acknowledged, in opening and closing arguments, and throughout his cross-examination of witnesses, that Martin was the leader of a drug-trafficking organization and operated drug houses throughout Knoxville. The government produced evidence through cooperating witness testimony and recorded phone conversations that indicated Brooks's involvement in Martin's drug-trafficking organization. Evidence was also put forth that in May 2007, law enforcement agents executed search warrants on Martin's

drug houses and seized drugs, cash, drug scales, and firearms. A law enforcement agent also testified that drugs seized from these houses were packaged for distribution purposes.

Evidence at trial showed that in the house where Brooks lived with Tavares Smith ("Smith"), law enforcement officers seized cocaine, ecstasy pills, firearms, cell phones, and digital scales. A law enforcement agent testified that the digital scales seized from the house were used to weigh drugs. One of the seized cell phones was subscribed to by Brooks and the other was subscribed to by Hall. The jury was shown the contact lists in the cell phones which included the names and aliases known to be used by members of Martin's drug organization. Additionally, at the time the house was searched, Smith, Martin, Hall, and Kenyatta Bankston ("Bankston") were found in the kitchen and living areas of the house and Brooks was found hiding in a closet.

Smith, who lived in the same house as Brooks, testified that he met Brooks in early 2007 and that Brooks provided security to Smith, who sold drugs from the house. Smith testified that Brooks would answer the door if someone came to purchase drugs or drop off money. Smith also testified that if he was not at home, Brooks would give drugs and receive money for the drug transactions. Smith also testified that both he and Brooks kept guns on them at all times.

In addition to Smith's testimony, the government presented recordings of phone conversations between Brooks and Smith and between Martin and Smith. The substance of these recorded phone conversations was the drug organization and indicated that Brooks talked with members of the drug organization about matters relating to the amount of drugs

being moved and the amount of money being taken in.  The recorded conversations contained references to aliases known to refer to members of Martin's drug organization and also contained slang known to be used for drugs terms.  Recorded conversations between Brooks and Smith indicated that the two discussed a certain black scale seized from one of the drug houses which was used to weigh drugs.  The conversations also contained references to individuals involved in drug dealing activities.  The government also presented evidence of calls received on a wiretap which indicated that Martin planned to send Brooks to Mississippi to sell drugs and provide security for Tony Manning ("Manning").  One call indicated that Martin had directed Manning to split the profits from drug sales with Brooks.

Upon the Court's review of this evidence, there is no question that the government put forward sufficient evidence to establish the elements of the drug charges against Brooks. The government produced evidence and testimony that Brooks was involved in conversations about drug deals and that he engaged in conversations related to Martin's drug organization. These conversations also showed that other members of the drug conspiracy discussed Brooks's role in the drug organization.  Finally, the recorded phone conversations indicated that other members of the drug organization discussed security issues with each other and Brooks.  Brooks argues that there were no GPS tracking of a cell phone purported to be his, and that the subscriber information of the seized cell phones was "wholly unreliable . . . due to [its] . . . unverified nature[,] . . . identity theft . . . and the practice of drug dealers to use multiple phones and false . . . identities." [Doc. 550, p.2].  However, despite thse assertions, Brooks has offered no evidence as to why the subscriber information in this case was

unreliable. Moreover, Brooks has offered no evidence to counteract the evidence of the known aliases contained in the contact lists found in these cell phones.

There was also evidence presented at trial that drugs were seized from drug houses that Brooks either lived in or was found to be associated with. When a search warrant was executed at one of the drug houses, Brooks was found in the closet of that house. There was also evidence that Brooks facilitated the sale of drugs in furtherance of the drug organization by receiving money, assisting in drug distribution, and providing security to members of the drug organization.

Drugs do not have to be found on a person or in a person's blood for a jury to conclude that a defendant has engaged in a drug conspiracy, possessed and intended to distribute drugs, and aided and abetted a conspiracy to possess and distribute drugs. In fact, the existence of a conspiracy may be inferred from circumstantial evidence. *Avery*, 128 F.3d 971. A jury presented with the above evidence, both circumstantial and direct, could reasonably conclude and infer that Brooks was involved in the drug conspiracy and aided and abetted drug transactions in furtherance of such conspiracy. The testimony of the witnesses, while not all consistent, was sufficient for a rational jury to conclude that Brooks acted with members of the conspiracy to promote, aid, or abet the conspiracy and that he was involved in various drug transactions because he provided security to the members of the drug organization. *See* 18 U.S.C. § 2. Thus, based on this evidence, the Court cannot conclude that the interests of justice require a new trial and the jury's verdict was against the manifest weight of the evidence. This is not a case of extraordinary circumstances or one in which the

evidence preponderates heavily against the verdict.  *See Hughes*, 505 F.3d at 593.

Accordingly, Hall's argument that the drug convictions were against the weight of the

evidence is hereby denied.

### 2.    Firearms Offenses

Brooks also argues that no rational trier of fact could have found the essential

elements of the firearms offenses beyond a reasonable doubt because "no weapons were

found on [Brooks's] person." [Doc. 550, p. 2].  In order to prove that Brooks aided and

abetted the possession of a firearm in furtherance of the drug trafficking offenses discussed

above, the government must prove the requirements of aider and abettor liability and that a

firearm was possessed in furtherance of a drug transaction.  *United States v. Mackey*, 265

F.3d 457, 461-62 (6th Cir. 2001) (noting that the government must prove that "a firearm was

possessed to advance or promote the commission of the underlying [drug trafficking]

offense").  "In order for the possession to be in furtherance of a drug crime, the firearm must

be strategically located so that it is quickly and easily available for use." *Mackey*, 265 F.3d

at 462.[3]  Thus, the elements the government must prove are: (1) commission of the

underlying drug trafficking offenses; (2) knowing possession of a firearm; and (3) possession

of a firearm in furtherance of the specified drug trafficking offenses.  *See* 18 U.S.C. §

924(c)(1); *see, e.g., United States v. Stewart*, 69 F. App'x 213, 217 (6th Cir. 2003).

---

[3] "Other factors that may be relevant to a determination of whether the weapon was possessed in furtherance of a crime include whether the gun was loaded, the type of weapon, the legality of its possession, the type of activity conducted, and the time and circumstances under which the firearm was found." *Mackey*, 265 F.3d at 462 (citation omitted).

As stated above, there was sufficient evidence by which the jury could have found Brooks guilty of the drug charges. The jury was also presented with evidence that two firearms were recovered from the house where Brooks lived with Smith. Smith testified that Martin required all members of his drug organization to have firearms, and that Martin had given Smith two firearms to keep at their house, one for him, and one for Brooks. Firearms were also found in the same place as the drug scales in the house occupied by Brooks and Smith. Martin Briddy ("Briddy") testified that Martin kept firearms in all his drug houses and Briddy also stated that he had seen firearms in at least two of the other drug houses operated by Martin. Mashato Lamar ("Lamar") testified that Brooks was sitting in one of the drug houses with a firearm on the floor beside him and that in a conversation with Martin about Brooks, Martin told Lamar that Brooks watched the drug house while Smith made drug runs. Manning also testified that the members of Martin's drug organization kept firearms at all of the drug houses to deter robbers. Finally, as stated above, Manning testified that Martin planned for Brooks to go to Mississippi to provide security for Manning, similar to what Brooks had done for Smith in Knoxville. The recorded phone conversation between Martin and Manning, submitted by the government, supported Manning's assertion.

This evidence is sufficient for a reasonable jury to conclude and infer that Brooks possessed firearms in furtherance of the drug charges described above, as required by 18 U.S.C. § 924(c). Firearms were found in the house he shared with Smith, testimony indicated that Martin gave firearms to both Smith and Brooks, and Lamar testified that he saw Brooks with a firearm. Further, the evidence and testimony indicated that Brooks's

primary job with the drug conspiracy was to protect and provide security for its members, so clearly, his possession of firearms was in furtherance of that as well. Accordingly, Brooks's argument in this regard is denied.

### 3. Felon in Possession

Brooks, aided and abetted by another, was also convicted of being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g)(1). In addition to establishing aider and abetter liability, the government must prove, beyond a reasonable doubt, the following three elements: (1) that Brooks had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) that Brooks knowingly possessed a firearm or ammunition; and (3) that such possession was in or affecting interstate or foreign commerce. *See United States v. Sawyer*, 409 F.3d 732, 735 (6th Cir. 2005).

As to the first element, Brooks stipulated that he was a convicted felon. As to the second element, as stated above, the government put forth sufficient evidence by which the jury could have concluded that Brooks knowingly possessed firearms, at least jointly, with others involved in the conspiracy. As to the third element, the government presented testimony from a witness qualified by the Court to give an opinion on the interstate nexus of the firearms in this case. The agent testified that the firearms seized from the house where Brooks resided were manufactured outside the state of Tennessee and had traveled in and affected interstate commerce. Brooks has not provided any evidence to the contrary. Accordingly, there was also sufficient evidence to sustain this conviction and this argument is denied.

### 4.     Sufficiency of the Evidence

In sum, the jury considered evidence of recorded conversations, wiretaps, firearms, cell phones, contact lists, and drug scales. The jury also heard testimony from law enforcement agents and cooperating witnesses. Brooks, through counsel, had the opportunity at trial to challenge the credibility of these witnesses and to thoroughly cross-examine each regarding their credibility and any inconsistent statements. Brooks also had the opportunity to put forth, by witness or otherwise, legitimate justifications for his actions. The province of the jury is to weigh the evidence and determine which explanation of the circumstances, the events, and the facts are the most credible. It is also the duty of the jury to consider the parties' explanation of the evidence established at trial and to make a decision based on that evidence.

In light of the evidence and testimony presented in this case, the Court finds that the evidence presented at trial was sufficient to support the convictions. After considering the evidence and testimony, a rational trier of fact could have determined that Brooks was involved in the drug conspiracy, the underlying drug transactions, and that Brooks aided and abetted the possession of firearms in furtherance of the drug offenses, such firearms having traveled in interstate commerce. Thus, the Court finds neither a miscarriage of justice nor that the weight of the evidence was against the verdict. Accordingly, Brooks has not sustained his burden under Rule 33(a). Given this determination, the Court need not

determine whether Brooks has established the less stringent burden required for his renewed Rule 29 motion[4] and both requests are hereby denied.

### D. Arguments for a New Trial Pursuant to Rule 33(a)

Federal Rule of Criminal Procedure 33(a) permits a court, upon motion by a defendant, to vacate a judgment and grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Brooks asserts that he was denied a fair trial because: (a) of prosecutorial misconduct; (b) a lack of minority representation in the jury venire; (c) the Court rule improperly on Brooks's *Batson* challenge; (d) the Court's denial of the motions to sever; (e) errors in the admission of exhibits; (f) errors in admitting the testimony of cooperating witnesses and in permitting perjured testimony; (g) the Court's refusal to redact name identifiers from the transcripts of recorded phone conversations; (h) alleged pressure by the Court on counsel for Brooks to truncate his cross-examination of government witnesses; (i) the Court's denial of Brooks's pretrial motion for a bill of particulars; and (j) errors in the admission, at trial, of statements of co-conspirators.

### 1. Prosecutorial Misconduct

Brooks raised the issue of prosecutorial misconduct during trial, an argument which was rejected by the Court. Here, Brooks asserts prosecutorial misconduct in connection with counsel for the government's closing and rebuttal arguments and in the tone of the statements and questioning by counsel for the government during jury selection. Brooks has given the

---

[4] Brooks made his first Rule 29 motion following the close of proof at trial. The Court denied the motion.

Court no specific statement or citation to the transcript to support his argument. Thus, the Court will not re-visit its previous denials of Brooks's argument regarding prosecutorial misconduct, as Hall has not articulated any new arguments or evidence. *See, e.g., United States v. Tocco*, 200 F.3d 401, 420 (6th Cir. 2000) (stating that "[w]hen reviewing claims of prosecutorial misconduct, we determine first whether the statements were improper. If they appear improper, we then look to see if they are flagrant and warrant reversal."); *United States v. Stover*, 474 F.3d 904, 915-16 (6th Cir. 2007) (noting, in the context of closing arguments, the standards for determining whether a prosecutor's comments are "flagrant"). The Court cannot judge whether a statement or statements were improper without being presented with a statement, or, at the very least, a general summation of the statements. Accordingly, Brooks's argument in this regard is denied.

### 2. The Venire

Brooks asserts that the venire in this case was devoid of any minority representation, save one African-American female, and that the composition of the venire denied him due process, equal protection, and the right to trial by an impartial jury. At trial, Brooks moved to dismiss the venire and call a new venire, or, in the alternative, for a mistrial. The Court denied both requests.

"The Sixth Amendment requires that the jury venire from which a jury is selected represent a 'fair cross-section' of the community." *United States v. Odeneal*, 517 F.3d 406, 411-12 (6th Cir. 2008) (quoting *United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998)). In *Duren v. Missouri*, the United States Supreme Court held that a defendant may establish

a *prima facie* fair cross-section violation by showing: (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process. *Duren*, 439 U.S. 357, 364 (1979). The government may rebut this *prima facie* case by showing that "a significant state interest [is] manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group." *Id.* at 367-68. *Duren* and its progeny make "crystal clear that a defendant's *prima facie* case includes all three of the above elements and each must be established before the government is required to justify an infringing selection procedure." *Allen*, 160 F.3d at 1103 (finding that while the defendants may have satisfied the first element, the defendants had not met their burden of proving the final two elements); *see Duren*, 439 U.S. at 367-69; *Ford v. Seabold*, 841 F.2d 677, 681 (6th Cir. 1988).

Brooks has the burden of showing the three prongs of the *Duren* test. Brooks has failed to meet this burden. Addressing the first prong, the Court will assume that the minority group identified by Brooks (presumably "African-Americans," although Brooks has alleged lack of representation of "any minority race or ethnic group" ) is a distinctive group within this community. However, as to the second prong, Brooks has not made any showing that the panel from whence the jury was chosen was not a fair and reasonable representation

of the community made up of the counties from which this Court draws its jurors.[5]  *Duren*,

439 U.S. at 364-65 (stating that the defendant must demonstrate the percentage of the

community made up of the group alleged to be under-represented).  Furthermore, as to the

third prong, Brooks has made no showing of a systematic exclusion of a particular group

from the jury selection process.  As the Sixth Circuit Court of Appeals has stated,

> [D]efendants must show more than that their particular panel
> was unrepresentative.  *Duren* requires us to look at the venires
> from which juries are selected, . . . and it has long been the case
> that defendants are not entitled to a jury of any particular
> composition-only to a panel from which distinctive groups were
> not systematically excluded.

*Ordeneal*, 517 F.3d at 412 (quoting *Allen*, 160 F.3d at 1103 (quoting *Taylor v. Louisiana*,

419 U.S. 522, 538 (1975))) (citations omitted).  Therefore, because Brooks has done nothing

more then make the general assertion that the jury in this case was drawn from a venire that

included no minority persons or persons from an ethnic group, Brooks's argument for a new

trial on these grounds is denied and the Court will not revisit its prior holdings on Brooks's

motions to dismiss the venire or, in the alternative, to grant a mistrial.

--------

[5] The Knoxville Courthouse serves the Northern Division of the Eastern District of
Tennessee.  It is the policy of the District Court for the Eastern District of Tennessee "that all
litigants in this court entitled to a trial by jury shall have the right to grand and petit juries selected
at random from a fair cross-section of the community in each division where the court convenes."
[*See* Standing Order *In Re*: Amendment of Jury Plan (amended Feb. 24, 2009), *available at*
http://156.125.44.74/docs/local_rules/orders/jury_selection_plan.pdf.]    The Northern Division
comprises the counties of Anderson, Blount, Campbell, Claiborne, Grainger, Jefferson, Knox,
Loudon, Monroe, Morgan, Roane, Scott, Sevier and Union counties.  [*Id.*]

### 3. The *Batson* Challenge

Brooks argues that the government's peremptory strike of the one African-American female juror in the venire violated his due process and equal protection rights and his right to a fair and impartial jury. In *Batson v. Kentucky*, 476 U.S. 79 (1986), the Supreme Court articulated the three-step process a trial court is required to use in determining whether the opponent of a peremptory challenge has established a *prima facie* case of racial discrimination:

(1)    a defendant must first make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race,

(2)    the burden then shifts to the prosecutor to articular a race-neutral explanation for striking the juror in question, and

(3)    the trial court must then determine whether the defendant has carried his burden of proving purposeful discrimination.

*See Hernandez v. New York*, 500 U.S. 352, 358-59 (1991) (citing *Batson*, 476 U.S. at 96-99). A race-neutral explanation has been defined as "an explanation based on something other than the race of the juror." *Hernandez*, 500 U.S. at 360.

As stated above, the venire in this case had only one female African-American juror. The government used one of its peremptory challenges to strike the juror, and Brooks objected. The government then provided two explanations for the strike. First, the government asserted that it struck the juror because her grandson had been convicted of drug and gun charges similar to the charges in this case and the grandson had been incarcerated for nine and a half years because of those convictions. Although the juror was unsure if the

convictions and trial took place in Knoxville, the government confirmed that the grandson had indeed been prosecuted by the Knoxville office of the United States attorneys. Second, the government stated that another reason it struck the juror was because she did not disclose the above information about her grandson when initially asked by the Court whether any family members had been involved in the criminal justice system. The juror explained that she had not answered because she did not understand the Court's question. The government expressed concern that if the juror was unable to understand this question or pick up clues from the statements of her fellow prospective jurors in response to this question, she may not be suitable as a juror as this was a complicated case.

Based on a totality of the circumstances, the Court found that the government's explanations were sufficiently race-neutral, based on something other than the juror's race, and there was no evidence of purposeful racial discrimination. Accordingly, the Court found that Brooks had not met his burden of proving racial motivation in the government's strike of the juror. The Court finds no reason to re-visit this determination. It is both plausible and persuasive that the government, in prosecuting a case that involved both drugs and guns, did not desire a juror on the case who had a family member convicted and imprisoned for similar crimes. No other prospective juror who had a family member convicted of similar crimes was allowed to remain on the jury. It is also plausible and persuasive that the government would not have wanted a juror who either did not understand a question that other jurors understood, or, if the juror did understand the question, to have withheld information from

the Court.  Thus, Brooks's argument that the Court's denial of the *Batson* challenge at trial was improper and warrants a new trial is denied.

### 4.    Motions to Sever

Brooks argues that the Court's denial of the motions to sever, submitted both pre-trial and during trial, were an "abuse of discretion" because the defense strategies of Hall and Brooks were antagonistic.  Brooks has not stated a specific "strategy" that was antagonistic, but the Court assumes that this argument is based on the testimony of Smith, whose cross-examination by counsel for Brooks was the impetus for Hall filing a motion to sever during the trial, a motion which Brooks joined.

"A strong policy presumption exists in favor of joint trials when charges will be proved by the same evidence and result from the same acts." *United States v. Critton*, 43 F.3d 1089, 1098 (6th Cir, 1995) (citing *United States v. Hamilton*, 689 F.2d 1262, 1275 (6th Cir.1982)).  Severance will be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534 (1993); *see also United States v. Davis*, 170 F.3d 617 (6th Cir. 1999). Antagonistic defenses alone are not enough; the defendant must show that the antagonistic defenses are likely to mislead or confuse the jury. *Critton*, 43 F3d at 1098; *United States v. Weiner*, 988 F.2d 629, 634 (6th Cir.), *cert. denied*, 510 U.S. 848 (1993).  A defendant must show "substantial," "undue," or "compelling" prejudice in order to gain a severance. *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002) (citations omitted).

In a case with facts similar to those presented in this case, *United States v. Bond*, 22 F.3d 662 (6th Cir. 1994), the defendant moved for a mid-trial severance based on the counsel for the co-defendant's cross-examination of a government witness. *Bond*, 22 F.3d at 666. On direct examination, the witness testified that he had seen the co-defendant spend money from a large bundle of cash at a mall the day after the robbery that was the subject of the charges. *Id.* During cross-examination, the co-defendant's attorney asked the witness about an earlier statement he made that he had seen the defendant at the mall with over a thousand dollars. *Id.* Counsel for the defendant counsel argued for a severance stating that "it appears that I have two prosecutors here." *Id.* The district court denied the defendant's motion for a severance and the Sixth Circuit affirmed.

Similarly, the Court here finds that a severance in this case would be inappropriate. Brooks has not presented the Court with any evidence of "strong prejudice" and has not demonstrated that Smith's testimony on cross-examination misled or confused the jury. Moreover, Smith's testimony was largely a repeat of other testimony elicited by the prosecution. Accordingly, this argument is denied.

### 5.    Admission of Exhibits

Brooks simply asserts that the Court's failure to admit his exhibits at trial violated his constitutional rights. Brooks has not cited any law, nor has Brooks pointed the Court to any particular exhibit or exhibits. Thus, due to lack of supporting argument or grounds upon which the Court can analyze this argument, it is denied.

### 6. Testimony of Cooperating Witnesses and Perjured Testimony

Brooks asserts that the government's use of Smith, Briddy, Lamar, and Manning as witnesses constitutes a knowing use of perjured testimony in violation of Brooks's constitutional rights. In order to show that the government put on testimony that it knew to be false, Brooks must show that: (1) the statements were actually false; (2) the statements were material; and (3) the prosecution knew them to be false. *See United States v. Hunter*, 558 F.3d 495, 504 (6th Cir. 2009); *United States v. Benton*, 64 F. App'x 914, 920-21 (6th Cir. 2003). Brooks has not sustained this burden of proving that the government knowingly put forth false testimony. Brooks has not provided any statement or statements from the trial as illustrations of perjured testimony. Brooks has not asserted that any statement or statements were material. And finally, Brooks has not provided any evidence that the government knew any witness statement to be false rather than inconsistent. Witnesses often testify to inconsistent facts and events and sometimes testimony by witnesses is clearly contradictory and "'mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony.'" *United States v. Scarborough*, 43 F.3d 1021, 1026 (6th Cir. 1994) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)). Moreover, it is the province of the jury to determine which witnesses and which set of facts are the most credible. Brooks's argument is denied.

### 7. Redaction of Names from Transcripts

Brooks asserts that the Court's denial of his motion to remove the name identifiers from the transcripts of the recorded conversations presented as evidence in this case was in

error because determining the identity of the individuals in the transcripts was the ultimate task of the jury.  Federal Rule of Evidence 901(b)(5) provides that a witness may identify or authenticate the voice or speaker on a tape if he or she has heard "the voice at any time under circumstances connecting it [the voice] with the alleged speaker."  Fed. R. Evid. 901(b)(5).  At trial, Smith, who had lived with Brooks in the same house, identified the voice on the recorded conversations as that of Brooks.  Counsel for Brooks had the opportunity to cross-examine Smith regarding his ability to identify the voice.  *See United States v. Crane*, 632 F.2d 663, 664-64 (1980) (holding that when a witness who was subject to cross-examination identified the defendant's voice on recorded tapes, the defendant "should not be heard to complain" regarding the identification).  Thus, because Smith was able to identify Brooks's voice, and because counsel for Brooks had an opportunity to discredit such identification, the Court does not find that its refusal to remove the name identifiers was in error.

### 8.     Alleged Truncation of Cross-Examination of Smith

Brooks alleges that the Court pressured counsel for Brooks to truncate his cross-examination of Smith because the Court disagreed with defense counsel's strategy and such pressure was a violation of Brooks's right to assistance of counsel, among other constitutional rights.  The Court disagrees with this characterization of the Court's instructions to counsel for Brooks regarding his cross-examination of Smith.  The Confrontation Clause of the Sixth Amendment does not prevent a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness.

On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. . . . the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

*Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (*per curiam*)) (quotations omitted) (emphasis in original). At trial, the Court did not pressure counsel for Brooks to truncate his cross-examination of Smith. Rather, the Court determined that counsel's attempts to impeach Smith were unnecessarily repetitive and marginally relevant. Accordingly, the Court was within its authority to impose a limitation on the cross-examination. Further, the Court only suggested that counsel for Brooks move on to another line of questioning and this was not in violation of Brooks's right to be confronted with the witnesses against him.

### 9. Bill of Particulars

Brooks asserts that the Court's denial of his pre-trial motion for a bill of particulars violated his right to assistance of counsel, among other constitutional rights. In proving a trial court's error in denying a bill of particulars, "the defendant must show not only that the court abused its discretion, but that defendant actually suffered surprise or other prejudice at trial." *United States v. Crayton*, 357 F.3d 560 (6th Cir. 2004) (quoting *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993)). Brooks has not offered the Court any showing of surprise or prejudice—accordingly, this argument is denied.

### 10. Statements of Co-Conspirators

Brooks argues that the Court's admission of the co-conspirators' statements at trial violated the Confrontation Clause, among other constitutional rights. Federal Rule of Evidence 801(d)(2)(E) provides that a co-conspirator's declarations are admissible when the declarations are made by conspirators during the course of and in furtherance of the conspiracy. F.R.E. 801(d)(2)(E). Brooks has given the Court no reason to find that any specific declaration was inadmissible, as Brooks has failed to identify a specific statement or statements, or even a particular co-conspirator in making his argument. Further, there is no Confrontation Clause violation here. In *United States v. Inadi*, 475 U.S. 387, 395-96 (1986), the Supreme Court noted the differences between the out-of-court statements of co-conspirators and the out-of-court statements of other witnesses. The Supreme Court noted that co-conspirator statements, "made while the conspiracy is in progress . . . provide evidence of the conspiracy's context[,]" and co-conspirators "speak differently when talking to each other in furtherance of their illegal aims than when testifying on the witness stand." *Inadi*, 475 U.S. at 395. As such, there is significant evidentiary value in the statements of co-conspirators during the course of a conspiracy. *Id.* Thus, Brooks's argument in this regard is denied.

### III. Conclusion

In sum, Brooks's Motion to Adopt Co-Defendant's Motion to Vacate Judgment and Grant New Trial [Doc. 617], is hereby **GRANTED**. However, finding that none of Brooks's arguments warrants a judgment of acquittal or a new trial, Brooks's Motion for Judgment of

Acquittal or in the Alternative for a New Trial and for an Extension of Time [Doc. 550] is

hereby **DENIED**, and Brooks's adopted Motion to Vacate Judgment and Grant a New Trial

[Doc. 610] is also hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE