UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AARON BROOKS, )<br>)<br>Defendant. ) | No.: 3:07-CR-51-TAV-JEM-5 |

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) [Doc. 892]. Numerous supplements and responses have been filed [Doc. 893 (response); Doc. 894 (reply); Doc. 912 (supplement); Doc. 921 (letter); Doc. 946 (supplement); Doc. 947 (supplemental response); Doc. 953 (supplement); Doc. 951 (supplemental response)]. The matter is now ripe for the Court's consideration. For the reasons stated below, defendant's motion for compassionate release [Docs. 892, 953] will be **GRANTED**.

**I.     Background**

A jury convicted defendant of the following: conspiracy to distribute and possess with the intent to distribute 5 kilograms or more of cocaine, 50 kilograms or more of cocaine base ("crack"), a quantity of marijuana, and a quantity of ecstasy, in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One); two counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and

(2) Counts Seven and Nine); possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841 (Count Eight); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count Ten) [Doc. 537].

At the time of sentencing, defendant was held responsible for at least 15 but less than 50 kilograms of cocaine, 50 grams of crack cocaine, and an equivalency of 8.77 kilograms of marijuana, for a combined marijuana equivalency of 3,212.81 kilograms. [Presentence Investigation Report ("PSR") ¶¶ 72, 78]. Ultimately, defendant's total offense level was calculated as 34 [*Id.* ¶ 93]. Given defendant's criminal history category of III, defendant's applicable guideline range for his drug offenses was 188 to 235 months' imprisonment [*Id.* ¶¶ 100, 121]. Defendant was also subject to consecutive mandatory minimums of 60 and 300 months' imprisonment, respectively, for his § 924(c) offenses [*Id.* ¶ 121]. Thus, his combined guideline range was 548 to 595 months' imprisonment [*Id.*].

The Court sentenced defendant to 548 months' imprisonment, followed by five years' supervised release [Doc. 700]. Defendant later moved for a sentence reduction, pursuant to 18 U.S.C. § 3582(c)(2), in light of Amendments 782 and 788 to the United States Sentencing Guidelines [Doc. 839]. The Court reduced his sentence to 511 months' imprisonment, followed by five years' supervised release [Doc. 850]. Defendant is scheduled for release on January 28, 2044. Inmate Locator, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited December 14, 2022).

2

## II. Compassionate Release

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). Now, a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of 30 days from the receipt of such a request by the warden of the facility in which the defendant is housed, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine

3

> whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). However, "[i]n cases where incarcerated persons [as opposed to the Bureau of Prisons] file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id.* at 1111. Thus, the Court has discretion to grant a compassionate release motion when the exhaustion requirement is met, extraordinary and compelling reasons warrant a sentence reduction, and the applicable § 3553(a) factors support the reduction. *See Jones*, 980 F.3d at 1107–08; *Elias*, 984 F.3d at 519. The Court considers each issue in turn.

### A. Exhaustion

The Court first examines whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *See United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

4

The United States concedes that defendant has exhausted his administrative remedies [Doc. 893, p. 5].[1] Thus, the Court may consider the merits of defendant's request.

### B. Extraordinary and Compelling Reasons

The Court next addresses whether defendant has shown that extraordinary and compelling reasons warrant compassionate release. In this instance, the Court finds that defendant has established extraordinary and compelling reasons for compassionate release. In reaching this decision, the Court recognizes that it has discretion to determine what constitutes extraordinary and compelling reasons. *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020).

Defendant asserts that a combination of factors in his case collectively create extraordinary and compelling reasons for his release [Doc. 892]. Specifically, defendant points to his severe obesity and hypertension, which he argues leave him vulnerable to severe illness from COVID-19 [*Id.* at 7]. Defendant further notes that data from the Center for Disease Control and Prevention ("CDC") indicates that COVID-19 affects black people more severely and disproportionately, and that the risk of death to black, non-Hispanic persons is 1.7 times higher than for white, non-Hispanic persons, while the risk of hospitalization is 2.3 times higher [Doc. 953, p. 3]. Additionally, defendant notes his "extraordinarily long sentence" in light of the sentence stacking requirements under

---

[1] Notably, the government does contest whether defendant exhausted a later-filed ground for relief based on family circumstances [Doc. 947, pp. 2–3]. However, because the Court does not rely on this ground as a basis for its decision, it declines to address the exhaustion requirement with regard to this specific argument.

5

18 U.S.C. § 924(c) at the time of his sentencing, which have subsequently been changed [Doc. 892, p. 12]. Defendant also highlights his rehabilitative efforts while imprisoned [*Id.* at 18–19]. The United States disputes whether these grounds constitute extraordinary and compelling reasons [Doc. 893].

"Although the statute does not define extraordinary and compelling, those words still have their ordinary meaning at the time Congress enacted the statute" and "when Congress enacted the statute . . . , extraordinary was understood to mean most unusual, far from common, and having little or no precedent," while "[c]ompelling meant forcing, impelling, driving." *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021) (citations and quotations omitted). While courts have "discretion to define extraordinary and compelling," some limitations exist. *Jones*, 980 F.3d at 1111. For instance, "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine," standing alone "does not present an extraordinary and compelling reason warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). Additionally, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

Turning to the facts of this case, the Court finds that extraordinary and compelling reasons support defendant's request for compassionate release. The combination of facts present in this case constituting such reasons include defendant's medical conditions, his heightened risk of complications from COVID-19, the severity of the sentence imposed,

6

particularly in light of post-sentencing legal developments, and his post-sentencing rehabilitation.

Beginning with defendant's medical conditions, the Court notes that at defendant's correctional institution, USP Coleman I, there are currently zero inmates and staff positive for COVID-19, with 127 inmates and 153 staff having recovered, and 1 inmate death during the course of the pandemic. *See* Bureau of Prisons, https://www.bop.gov/coronavirus (last accessed Dec. 15, 2022). The Court notes that these numbers indicate a presently low risk of contracting COVID-19 in defendant's correctional institution. Moreover, "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *Lemons*, 15 F.4th at 751. However, this Court finds that defendant's risk for developing serious complications if he contracted COVID-19, in combination with the severity of his health issues, and the other factors discussed below, cumulatively establish extraordinary and compelling reasons for compassionate release.

The inmate requesting compassionate release in *Lemons* asserted that he suffered from hypothyroidism and therefore had a heightened risk of contracting COVID-19, but the inmate did not describe "what heightened risk he faces" and the district court noted that "hypothyroidism does not appear on the Centers for Disease Control's list of risk factors for COVID-19." *Id.* In contrast to the inmate in *Lemons*, defendant suffers from multiple conditions the CDC recognizes as risk

7

factors for COVID-19. For instance, defendant's height and weight results in a body mass index ("BMI") of 44.1 [Doc. 912, p. 2]. *See* Adult BMI Calculator, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last accessed Dec. 15, 2022). According to the CDC, a BMI greater than 25 "can make you more likely to get very sick from COVID-19. The risk of severe illness from COVID-19 increases sharply with higher BMI." *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed Dec. 15, 2022). Defendant's BMI of over 40 results in a classification of "severe obesity," indicating that his risk of severe illness from COVID-19 is even higher than the average person suffering from obesity. *See id.* Additionally, the CDC has acknowledged that hypertension can possibly make an individual more likely to get very sick from COVID-19. *See id.* And "[a] person's risk of severe illness from COVID-19 increases as the number of underlying medical conditions they have increases." *Id.* The Court concludes that defendant's medical conditions and his heightened risk of complications if he contracts COVID-19, combined with the factors discussed below, constitute extraordinary and compelling reasons for compassionate release.

Next, the Court finds that defendant's extraordinarily lengthy sentence, which was dictated by the statutory scheme at the time of his sentencing, but which has since been amended, combined with the other factors discussed, constitute extraordinary and compelling reasons for compassionate release. In addressing this ground, the Court notes

8

that jurisprudence in this Circuit has been somewhat unclear on consideration of non-retroactive changes of law in the context of a compassionate release motion. The Sixth Circuit first addressed this issue in *United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) and *United States v. Owens*, 996 F.3d 755 (6th Cir. 2021), *Tomes* held that the non-retroactive nature of § 401 of the First Step Act, which reduced the penalties of certain drug crimes, could not qualify as an extraordinary and compelling reason for the purposes of compassionate release. *Tomes*, 990 F.3d at 505. In contrast, *Owens* held that a trial court may consider such non-retroactive statutory amendments in conjunction with any other applicable factors and determine whether, under the totality of the circumstances, a defendant established extraordinary and compelling reasons. *Owens*, 996 F.3d at 763.

In *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021), the Sixth Circuit discussed the apparent split created by *Tomes* and *Owens*. The *Jarvis* Court held that *Tomes*, which was decided before *Owens*, controlled. *Jarvis*, 999 F.3d at 445–46. The *Jarvis* Court went on to hold that *Tomes*'s holding was not dicta and found that *Tomes* "excluded non-retroactive First Step Act amendments from the category of extraordinary or compelling reasons, whether a defendant relies on the amendments alone or combines them with other factors." *Id.* at 446.

Subsequently, however, the Sixth Circuit determined that *Tomes* only stands for the proposition that "a nonretroactive sentence cannot *alone* serve as the basis for a finding of extraordinary and compelling circumstances[.]" *United States v. McCall*, 20 F.4th 1108, 1113 (6th Cir. 2021) (emphasis in original). The court further stated:

9

> *Owens* was the first in-circuit case to address the issue of a nonretroactive sentence as one of several factors creating an extraordinary and compelling reason for compassionate release. *Jarvis*, by contravening *Owens*, created an intra-circuit split. Because *Owens* was published before *Jarvis*, *Owens* "remains controlling authority" that binds future panels.

*Id.* at 1114. Thus, the court concluded that "a court may consider a nonretroactive change in the law as one of several factors forming extraordinary and compelling circumstances qualifying for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)." *Id.* at 1116. However, the Sixth Circuit later granted a rehearing *en banc* in *McCall* and vacated the panel decision pending *en banc* rehearing. *United States v. McCall*, 29 F.4th 816 (6th Cir. 2022). The Sixth Circuit heard oral argument on this matter on June 8, 2022, but no *en banc* opinion has yet been issued. Accordingly, the issue of what, if any, weight to give non-retroactive changes of law in the context of compassionate release requests remains undecided in this Circuit.

However, a few days after the Sixth Circuit heard oral argument on *McCall*, the Supreme Court issued its opinion in *Concepcion v. United States*, 142 S. Ct. 2389 (2022), in which it addressed "whether a district court adjudicating a motion under [Section 404 of] the First Step Act may consider other intervening changes of law . . . in adjudicating a First Step Act motion." 142 S. Ct. at 2396. The Supreme Court concluded that a district court may consider intervening changes of law, stating that "[i]t is only when Congress or the Constitution limits the scope of information that a district court may consider in deciding whether, and to what extent, to modify a sentence, that a district court's discretion to consider information is restrained." *Id.*

10

No court within this Circuit has yet addressed *Concepcion*'s application to the issue at hand, namely, whether the Court can consider non-retroactive changes in law, and specifically, the First Step Act's changes to the § 924(c) sentence stacking procedure, in the context of compassionate release motions. However, the Ninth Circuit recently held that the Supreme Court's decision in *Concepcion* confirmed its decision to join the First, Fourth, and Tenth circuits in holding that district courts may consider non-retroactive changes in sentencing law, in combination with other factors, when analyzing extraordinary and compelling reasons under § 3582(c)(1)(A). *United States v. Chen*, 48 F.4th 1092, 1098–99 (9th Cir. 2022) (citing *United States v. Ruvalcaba*, 26 F.4th 14 (1st Cir. 2022); *United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021); and *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020)). Conversely, the District of Columbia Circuit concluded that Congress enacted a statutory limitation within the compassionate release statute, namely, that a reduced sentence should only be imposed for "extraordinary and compelling reasons," which, in that court's view, non-retroactive changes of law are not. *United States v. Jenkins*, 50 F.4th 1185, 1199–200 (D.C. Cir. 2022).

Although the law is unsettled on this matter, the Court ultimately concludes that it may consider the non-retroactive changes in law, in conjunction with other factors, in this specific case. While a non-retroactive change in law may not generally be "extraordinary," the difference that the change of law would make to defendant's sentence in this particular case is both "extraordinary and compelling." At the time of his sentencing, defendant was subject to consecutive 30 years' imprisonment, in addition to any other sentence imposed,

11

under § 924(c)'s stacking scheme [*See* Doc. 700]. However, if sentenced today, defendant would only be subject to a consecutive 10 years' imprisonment, in addition to any other sentence imposed—a significant, 20-year difference. *See* 18 U.S.C. § 924(c)(1)(A). Thus, assuming all other factors remained the same, if sentenced today, defendant would be subject to a sentence of 271 months, rather than 511 months [*See* Doc. 850]. Defendant has now served more than 50% of this lower sentence [*See* Doc. 893-2, p. 1]. Considering the significant impact that this non-retroactive change in law would have on defendant's sentencing exposure, the Court finds that, in combination with the other factors discussed, such constitutes an extraordinary and compelling ground for a sentence reduction.[2]

Finally, defendant's post-conviction rehabilitation, in combination with the other factors, also supports finding extraordinary and compelling reasons in this case. While "rehabilitation of the defendant *alone* shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t) (emphasis added), the Court finds that, in tandem with defendant's medical conditions and the non-retroactive changes in law, defendant's rehabilitative efforts constitute extraordinary and compelling reasons in this case. While incarcerated, defendant has taken numerous classes, including classes in anger management, interviewing skills, and recidivism awareness [Doc. 951-3], in an attempt to better himself, despite facing a severe sentence with no promise of imminent release from

---

[2] However, while the Court finds that defendant's lengthy sentence is a compelling factor in this case, the Court nonetheless would find that, even if *Jarvis* controls and the Court may not consider this factor, the remaining factors discussed in this memorandum opinion and order nonetheless constitute extraordinary and compelling circumstances warranting relief.

12

prison. Defendant has also participated in the "Challenge Program," and his supervisor in the program noted that defendant's "work on developing caring for others and open-mindedness is showing" and defendant "openly assists others in the community with Challenge material . . . with no monetary gain" [Doc. 953-3, p. 1]. Defendant also serves as a mentor in the "Welcoming and Orientation Service Group" for the Challenge Program [*Id.* at 4], as well as an "Intervention Committee Member" [*Id.* at 6]. Defendant was presented with a certificate naming him as a "Challenge Prep Program Facilitator" [*Id.* at 8]. Accordingly, it appears that defendant has not only taken advantage of BOP programming for himself, but has taken on leadership positions to help assist others.

Multiple individuals have submitted letters in support of defendant's motion [Doc. 892-7; Doc. 953-4], stating defendant is a kind person who always seeks to help his family and others. His family acknowledges that defendant has made mistakes, but states that he has never been violent, and that he will have a support system upon his release. Considering all of this information, the Court finds that defendant has performed admirably in his rehabilitative efforts, without the promise of imminent release, indicating a strong desire to be a contributing member of society. Combined with the factors discussed above, the Court finds that defendant's rehabilitative efforts are extraordinary and compelling.

Considering all of the circumstances present in this case together, including defendant's medical conditions, his risk of severe illness if he contracts COVID-19, the significant of non-retroactive changes in the law to his case, and his post-conviction rehabilitation, the Court finds that extraordinary and compelling reasons support

13

defendant's compassionate release.  Because the exhaustion requirement has been met and extraordinary and compelling reasons support compassionate release in this case, the Court may grant defendant's motion if the applicable § 3553(a) factors support compassionate release.  *See Jones*, 980 F.3d at 1107–08; *Elias*, 984 F.3d at 519.

## C.     18 U.S.C. § 3553(a) Factors

Finally, the Court addresses whether the applicable 18 U.S.C. § 3553(a) factors support compassionate release in this case.  Defendant asserts that they do, pointing to his rehabilitative efforts, his history and characteristics, the disparity between the sentence imposed and the statutory mandatory minimum sentence for the same conduct today, and his release plan [Doc. 892, pp. 18–21].  The United States responds that defendant's conduct was serious, he has incurred disciplinary infractions, and, given the statutory sentence he would face if sentenced today, "[g]ranting him immediate release would be inconsistent with the totality of the § 3553(a) factors" [Doc. 893, p. 12].

Pursuant to 18 U.S.C. § 3553(a), the Court must consider the following factors and impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;

14

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . .;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The Court notes that it previously considered the applicable § 3553(a) factors both at the initial sentencing and when reducing defendant's sentence to 511 months, at which point the Court determined that the factors supported a sentence reduction [Doc. 850, pp. 5–6]. Considering these factors again in light of defendant's instant motion, the Court finds that these factors support compassionate release. The Court has considered the nature and circumstances of defendant's offenses and defendant's history and characteristics, including defendant's personal characteristics, criminal history, and post-sentencing conduct. The Court has also considered the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed education and training, medical care,

or other correctional treatment. The Court has also considered the kinds of sentences available and the sentencing range, the need to avoid unwarranted disparities, and the need to provide restitution to any victims.

While the Court acknowledges that defendant's conduct in this case was serious, the Court finds that defendant's age and extensive post-sentencing rehabilitation significantly lessen his likelihood of reoffending, and therefore, defendant is unlikely to present a risk to the public. Moreover, the Court notes that defendant has already served a significant period of incarceration, which the Court finds will provide sufficient deterrence, promote respect for the law, and provide just punishment. Finally, upon his release, defendant remains subject to a five-year term of supervised release, during which he will be subject to certain conditions and be supervised by the United States Probation Office. The Court finds that this five-year term of supervised release will further protect the public, promote respect for the law, and assist defendant in her rehabilitative efforts.

Accordingly, having considered the relevant § 3553(a) factors and the record before it, the Court finds that these factors support defendant's compassionate release. Because defendant has satisfied the exhaustion requirement, extraordinary and compelling reasons exist, and the applicable § 3553(a) factors support compassionate release, the Court finds compassionate release to be appropriate. Therefore, defendant's motion [Docs. 892, 953] is **GRANTED**.

## III. Conclusion

For the reasons set forth above, defendant's motion [Docs. 892, 953] is **GRANTED** and defendant's sentence is **REDUCED** to **TIME SERVED** followed by five (5) years' supervised release. While on supervised release, the defendant shall be subject to the following additional special condition of supervision:

> 1. The defendant shall submit his or her person, property, house, residence, vehicle, papers, [computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States probation officer or designee. Failure to submit to a search may be grounds for revocation of release. The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his or her supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

17